UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  THE MATTER OF | * | CIVIL ACTION NO.:  2:22CV04987 |
| LA CARRIERS, LLC AS OWNER AND | * | |
| OPERATOR OF THE M/V KAREN KOBY, | * | JUDGE DARRELL J. PAPILLION |
| PETITIONING FOR EXONERATION FROM | * | |
| OR LIMITATION OF LIABILITY | * | MAG. JUDGE KAREN WELLS ROBY |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## PRE-TRIAL ORDER

NOW COME the parties to the above-entitled and enumerated cause of action who submit the

following Pre-Trial Order in this matter:

1. **Date of Pre-Trial Conference:**      December 6, 2023 at 3:30 p.m.

2. **Appearance of Counsel:**

   Jefferson R. Tillery (La. Bar Roll No. 17831)
   T. Patrick Baynham (La. Bar Roll No. 16805)
   JONES WALKER, LLP
   201 St. Charles Avenue
   Suite 5100
   New Orleans, Louisiana  70170-5100
   Telephone:     (504) 582-8616
   Facsimile:     (504) 589-8616
   jtillery@joneswalker.com
   tpbaynham@joneswalker.com
   skuebel@joneswalker.com

   and

   Lexi T. Holinga (La. Bar Roll No. 30096)
   HINSHAW & CULBERTSON, LLP
   400 Convention Street
   Suite 1001
   Baton Rouge, Louisiana  70802
   Telephone:     (225) 333-3244
   Facsimile:     (225) 612-6398
   lholinga@hinshawlaw.com
   *Attorneys for LA Carriers, LLC*

Alan K. Breaud (La. Bar Roll No. 3420)
BREAUD & MEYERS, APLC
420 Oil Center Drive (70503)
Post Office Box 51365
Lafayette, Louisiana  70505-1365
Telephone:      (337) 266-2200
Facsimile:      (337 ) 266-2204
*Attorneys for Rigid Constructors, LLC*

3.    **Description of Parties:**

LA Carriers, LLC ("LA Carriers") is petitioner of this exoneration and/or limitation action.

LA Carriers is a maritime towing and transportation company based out of Larose, Louisiana, founded

in 1986 by Captain Russel Plaisance.  LA Carriers offers a fleet of inland and offshore towing vessels

concentrated on the gulf coast regions with operations throughout the United States, Central America,

and the Caribbean.  LA Carriers was contacted by a broker to tow the Ambition crane barge owned

by Rigid from Devall Fleet on the Calcasieu River to Mile Marker 60 of the Mississippi River.  LA

Carriers assigned its tug, the "M/V KAREN KOBY", to complete the voyage.

Rigid Constructors, LLC ("Rigid") is a limited liability company organized under the laws of

the State of Louisiana.  Rigid performs civil and marine construction work.  Rigid owned a barge

with a mounted E-crane referred to as the barge Ambition which is the subject of this litigation.  The

barge Ambition had been appraised for $6,300,000.00 (fair market value) just five days before its

sinking while under the tow of M/V KAREN KOBY.  The barge Ambition was a specially-designed

barge which was highly sought after because of the E-crane's reach and bucket capacity.  (A photo

of the barge Ambition is included in Rigid's Answer and Claim, Doc. 10, p. 8 of 14.)

4.    **Jurisdiction:**

This claim was filed pursuant to 46 U.S.C. § 30501, et seq. (the "Limitation Act") and is an

admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

This action is governed by Rule F of the Supplemental Rules for Admiralty or Maritime Claims of

the Federal Rules of Civil Procedure.  This Court has subject matter jurisdiction by virtue of the Limitation Act and by virtue of 28 U.S.C. § 1333.  Jurisdiction is not contested.

**5.**    **Pending or Contemplated Motions:**

LA Carriers filed a Motion for Partial Summary Judgment [Doc. 38] seeking to dismiss the claim asserted by Rigid for "loss of use and future income and opportunity".  Rigid filed a Memorandum in Opposition [Doc. 43].  In its Reply Memorandum [Doc. 49], LA Carriers filed two new Affidavits in support of its Motion for Partial Summary Judgment.  In response, Rigid filed a Motion to Strike [Doc. 50], seeking to strike the new evidence attached by LA Carriers to its Reply Memorandum.  The Motion for Partial Summary Judgment and the Motion to Strike are both pending.

Rigid will file before the Pretrial Conference a Motion to Quash and Motion in Limine addressing several Subpoenas Duces Tecum issued and served by counsel representing LA Carriers in violation of FRCP 45.  By its own admission, LA Carriers issued, on November 10, 2023, Subpoenas Duces Tecum to Rigid's experts and other companies involved in this incident without first sending copies of the same to Rigid's counsel, as provided for in Rule 45.  In fact, LA Carriers never did send copies of the Subpoenas Duces Tecum to counsel for Rigid who only found out about these Subpoenas Duces Tecum when its experts contacted Rigid's counsel.  The first notice that Rigid's counsel received of the issued Subpoenas Duces Tecum was the day after they were due.  LA Carriers' counsel admits that they mailed copies of the Subpoenas Duces Tecum seven days after they were issued in violation of FRCP 45, said transmittal has never been received by Rigid's counsel.

Rigid is also including a Motion in Limine and Motion to Strike to prevent any documents received by LA Carriers from the wrongfully-issued Subpoenas Duces Tecum from being used by any witness or expert in this matter in their testimony or in any way introduced into evidence.  LA Carriers should not be able to wrongfully issue Subpoenas Duces Tecum in flagrant violation of the Federal Rules and thereafter benefit from the information.  *Eyer v. Rivera*, 2019 WL 13150023 (W.D.

Tex. 10/25/19); and *Ross v. Board of Regents of University of Wisconsin System*, 655 F.Supp.2d 895 (2009).

LA Carriers will address Rigid's motions in due course but denies the above characterization of events.

**6.**    **Brief Summary of Material Facts:**

    **a.**    **Plaintiff:**

The M/V Ambition, owned and operated by Rigid Constructors, was being towed by La Carriers when it capsized and sank on June 15, 2022, releasing an estimated 2000 gallons of oil. No injuries were reported.

Petitioner in limitation, LA Carriers, is a maritime towing company based out of Larose, Louisiana, founded in 1986 by Captain Russel Plaisance. La Carriers offers a fleet of inland and offshore towing vessels with operations throughout the United States, Central America, and the Caribbean.

Rigid Constructors, LLC (Rigid) is headquartered in Lafayette, Louisiana and formed the marine division of their construction company in 2020 after Covid. Rigid purchased a handful of barges, including the two barges at issue here, GD 962 and GD 983, and had the barges welded/ married together and mounted an e-crane on top of the two barges to make up the M/V Ambition.

On or about June 12, 2022, Rigid contacted a broker, Patriot Marine Services, requesting relocation of Barge AMBITION from Devall Fleet in the Calcasieu River near Sulphur, Louisiana to Mile Marker 60 of the Mississippi River near Ironton, Louisiana.

Prior to the voyage at issue, LA Carriers had previously towed the AMBITION in February 2022, and prior to that voyage, the Captain at the time expressed concerns about the equipment on the M/V AMBITION not being strapped down during offshore transit. Patriot and Rigid assured La Carriers that the M/V Ambition could be towed in a safe and appropriate manner, despite the fact that

the AMBITION is composed of two deck barges welded together.  In fact, Rigid provided Patriot who provided LA Carriers' a stack of engineering drawings of the AMBITION.  Patriot claimed that the barge was built to "ABS SPEC"- ABS is the "American Bureau of Shipping" and is the preeminent authority on barge construction and classification.  A barge in compliance with ABS specifications indicates that the vessel is consistent with rigorous industry standards.  Further Rigid superintendent sent an e-mail to Patriot, which Patriot forwarded to LA Carriers, and advised that the only requirements for this voyage were "that a near coastal route be taken & sea conditions will be within the allowable limits as stated by Rigid 4ft to 6ft wave height maximum and that the travel time will be less than 48-hours….No other special instruction will be given other then(sic) the above sea condition and near coastal route to be taken."   These communications were exchanged in connection with the February 6, 2020 voyage prior to the voyage at issue.

LA Carriers management relied on the Patriot and Rigid representations, and prior successful voyage, when approached again by Patriot for  the towing operation of the AMBITION in June 2022. LA Carriers agreed to tow the AMBITION and assigned its tug, the M/V KAREN KOBY to carry out the task.  The M/V KAREN KOBY is a twin screw, steel hull, United States Coast Guard inspected offshore service model bow towing vessel, 2700 horsepower, of standard design, and fitted with a stern towing winch. There is no evidence that the KAREN KOBY was not seaworthy.

Due to height restrictions (air draft) of barge AMBITION, as well as the height of the crane barge, both Rigid and Patriot were aware that the barge would need to be towed offshore between the Calcasieu River jetties and Southwest Pass at the entrance of the Mississippi River.

As stated, Rigid previously requested that the AMBITION be towed to its destination within 48 hours and that the barge remain in calm seas less than 4-6 foot for the February tow.

Prior to the voyage at issue, Captain Chester Murphy of La Carriers conducted a navigational assessment and voyage plan, and determined that the M/V Ambition must be towed in a manner to

avoid both the Trinity Shoals and Tiger Shoals, oil rigs, and other obstacles that were not compatible with a safe and prudent tow of the AMBITION.

On June 14, 2022, at approximately 0940, the M/V KAREN KOBY arrived alongside the Barge AMBITION which was secured down in position at the Devall Fleeting area in the Calcasieu River.   At approximately 1000 hours, the M/V Ambition crew from Rigid, consisting of a superintendent and five additional operators/deckhands arrived on the Barge AMBITION to prepare it for the voyage.  At approximately 1020, the M/V KAREN KOBY at the instruction of Rigid, departed the Deval Fleet with Barge AMBITION in tow bound for the Stone Fuel facility dock in Cameron, Louisiana,  in order to allow Rigid personnel to fuel and ballast the AMBITION prior to departure.   The Rigid crew (save two Rigid employees who remained on the barge) left the AMBITION and travelled by vehicle to Stone Fuel Dock to continue to prepare the AMBITION for the voyage.  The crew members of Rigid all testified as to different stories as to whether the barge was ballasted fully as Stone Fuel Dock closed before the crew was finished.  See Stone Fuel Ticket. The only paperwork produced by Rigid with respect to the Ambition was an engineering survey obtained when the barges were married together and the crane place on top of the barges that contained a conditions sections which states: barges must be fully ballasted.

A deckhand of the M/V KAREN KOBY conducted a visual inspection of the Ambition and located open hatch covers before departing Stone Fuel, documented same and called Rigid to return to fix the issue.  The Rigid crew returned, boarded the barge to address the problem and informed the M/V KAREN KOBY captain at 1700 hours on June 14, 2023 that the AMBITION was "ready to go", secured for its voyage.  The Rigid crew departed.

At approximately 1720 hours, the tug M/V KAREN KOBY departed Cameron, Louisiana and at approximately 1745 hours cleared the Calcasieu River jetties, placing the Barge AMBITION on a stern tow line.

According to the Captain and crew of the M/V KAREN KOBY, as well as the vessel logs, the tow of the Barge AMBITION that took place during the evening of June 14, 2022 and the early morning of June 15, 2022 was uneventful and carried out with mild offshore sea conditions from two to three feet.

At approximately 0330 hours, June 15, 2022, Captain Jarrod Williams, Relief Captain, and First Mate were on watch and began to notice an inexplicable slowdown of the tow.  Captain Williams used a spotlight and binoculars to take a look at the Barge AMBITION and noticed port list to the barge.  Captain Williams reported the situation to Captain Murphy who was off duty and resting at the time.  According to Captain Murphy, soon after he arrived in the wheelhouse (within a few minutes), he likewise observed Barge AMBITION listing to port.  He did not see any water, waves or spray affecting the barge.  At approximately 0400 hours June 15, 2022, Barge AMBITION suddenly capsized to port, becoming partially submerged in approximately 50 feet of water at a location approximately 18 n.m. from the coast near Freshwater City, Louisiana.  The Coast Guard was contacted, conducted an investigation and required Rigid to clean up the spill and conduct salvage operations.

Subsequently, Rigid contracted with McKinney Salvage LLC for both the immediate spill response and Barge AMBITION wreck removal, which was completed during late September 2022.  The Ambition and its crane were declared a total loss.

The Coast Guard determined that the probable cause of the capsizing and sinking of the Ambition was Rigid's lack of hull inspection and maintenance, and not conducting permanent repairs, which resulted in the failure of the hull and subsequent flooding.   Subsequently, experts of La Carriers investigated the remains of the barge, conducted measurements and testing and determined that the Ambition capsized and sank because:

1.  The AMBITION sunk as a result of waste holes in No. 1 starboard void which allowed water to ingress into the hull. This water further ingressed into other void compartments through wasted/compromised bulk heads.

2.  As the GD 962 took on water and began losing free boards the starboard barge, GD 983, was adding flotation further resulting in the barge sinking to the port bow. NOTE: (the AMBITION was made up of an E-crane mounted on two barges, GD 962 and GD 983. The GD 962 had severe wastage in its bulkheads and cracks and holes in the hull. The other barge, GD 983 was in relatively better shape, so when the GD 962 began taking on water, the GD essentially held it up until the 962 had taken on such much water that it was caused to flip, sinking both barges and the crane.

3.  the sea conditions (2-3 feet) which Rigid had advised LA Carriers were acceptable sea conditions for the tow of the AMBITION for a prior voyage, were the same at 12 miles offshore and 18 miles offshore, according to data obtained from sea buoys.

4.  During testing, experts discovered two areas which contained remnants of epoxy. This indicates the owners of the AMBITION attempted to repair holes in the barge with epoxy - as opposed to a permanent repair which would have required that the AMBITION be dry docked, which never happened.  It would have cost Rigid approximately $5,000 to drydock the Ambition to perform permanent repairs.

5.  The defects in the hull and bulkheads of the AMBITION could not have been discovered unless the vessel had been dry docked or the Rigid crew had performed an internal inspection of the hull – both of which are beyond the legal responsibilities of the tower under maritime la

6.  Severe corrosion was observed to be present on the structural members, hull plating and "watertight" bulkheads in the port barge. The corrosion is consistent with uniform corrosion due to water that has been occurring over the course of many years. If the corrosion found would have been caused by the ambition sinking and exposure to salt water, it would have taken 9-32 years for this amount of corrosion to take place, based on studies.

7.  Had the "watertight" bulkheads actually been watertight and filled as directed in the initial analysis by naval architects when the AMBITION was created, stability would have been sufficient and the AMBITION would not have sunk.

8.  Rigid, as owner of the AMBITION, failed to maintain the AMBITION in accordance with industry standards and practices and **Coast Guard requirements that barges be regularly inspected for routine maintenance and repairs.**  This failure of Rigid was the cause of the loss of watertight integrity of the AMBITION and resulted in the sinking of the AMBITION.

Following the sinking of the Barge AMBITION, LA Carriers filed this limitation action seeking exoneration from or alternatively limitation of its liability to the value of the M/V KAREN KOBY.   As an aside, Rigid filed suit in the United States District Court, Western District of Louisiana, against its insurers for the loss and salvage of the Ambition.   Rigid's insurer Mitsui denies that Rigid is owed any coverage based on a determination that the M/V Ambition was unseaworthy when it departed on the voyage with La Carriers.  The salvor, McKinney Salvage, filed suit in United States District Court for the Western District of Louisiana against Rigid for the cost of the salvage (approximately $9 million) and that case is also pending.

Rigid filed an answer and claim in this limitation action seeking damages for the loss of the AMBITION, loss of use damages for the AMBITION, and the cost of the salvage of the AMBITION. LA Carriers has filed a Motion for Partial Summary Judgment on Rigid's claim for loss of use damages based on the fact that the AMBITION was a total loss and, thus, loss of use damages are not available, currently pending before this Court.

> **b.**   **Defendant:**

Rigid contends that LA Carriers, LLC ("LA Carriers"), both on a management level and through the Master of its tug, M/V KAREN KOBY, was solely negligent in causing the sinking of the barge Ambition on June 15, 2022.  Accordingly, its claim for exoneration from, or limitation of liability, should be denied.   Its claim that the fair market value of M/V KAREN KOBY was $4,720,000.00 plus pending freight totaling $52,785.00 (total $4,772,785.00) at the time of the accident is inadequate and not the true value of the vessel.  Rigid's barge Ambition was a total loss as a result of the sinking, causing it to lose one of its most profitable pieces of equipment, with a fair market value of $6,300,000.00 as appraised by an independent appraiser just five days before the sinking.  The average charge to customers for use of the barge Ambition was at least $10,000.00 per day.

As a result of the negligence of the management of LA Carriers, and both the negligence and unseaworthiness of M/V KAREN KOBY, of which the management of LA Carriers had privity of knowledge, salvage costs totaling $9,076,885.53 were incurred to raise the barge. Rigid also incurred vessel standby costs totaling $513,661.07 for vessels required to maintain station by the sunken barge through its salvage, pollution response costs totaling $320,291.53, third party barge and timber mats rental totaling $321,975.12, and loss of use/opportunity totaling $3,807,000.00.

The voyage during which the barge Ambition was caused to sink in the exclusive control of M/V KAREN KOBY began on June 14, 2022. At that time, LA Carriers' tug, M/V KAREN KOBY, arrived at the Devall Fleeting area at the intersection of the Intracoastal Waterway and the Calcasieu River to pick up the barge Ambition to bring it to Myrtle Grove, Louisiana. (The barge was going to be brought up the Mississippi River for the purpose of offloading a ship.) LA Carriers had been contacted by a marine broker, Patriot Marine Services, LLC, to tow the barge to its intended location. Neither LA Carriers nor its tug contacted Rigid at anytime to discuss the tow, the capacity of the barge Ambition, or, more importantly, the route exclusively designed and plotted by M/V KAREN KOBY. The barge Ambition was designed and has always been an inland construction barge operating in the rivers of Louisiana and near coastal (building jetties). It was not required to be ABS certified, never claimed to be ABS certified, did not have a Plimsoll mark on its hull, nor ever possessed a load line certificate (46 CFR Parts 41-47). Accordingly, Federal law restricted towing the barge any further than 12 miles from the shoreline (46 CFR Part 7). The barge Ambition was not designed to be offshore.

The Master of M/V KAREN KOBY, Chester Murphy, has testified that he was perfectly satisfied that the barge Ambition was seaworthy at the time he took possession of the barge. He had his crew inspect all of the compartments in the barge prior to leaving on the voyage. He agreed that it was his final and sole responsibility to make sure the barge was fit and sturdy to be towed

(seaworthy) prior to him accepting the same.  There will be no testimony in this case that Rigid had any knowledge the barge was not fully seaworthy at the time that M/V KAREN KOBY took possession.  The barge had been constantly used since it was placed in service on June 19, 2020.  It had been towed numerous times before, always without incident.  LA Carriers took an unnecessary risk by allowing its Master to plot a course outside of barge Ambition's capabilities and caused this loss.

After M/V KAREN KOBY assumed control of the barge Ambition, while going down the Calcasieu River towards the Gulf of Mexico, it struck a navigational pole on the port bow of the barge.  The eyewitness testimony was that it struck the navigational pole with such force that it basically ran over the pole that had been implanted in the bed of the river.  At no time did the Master of M/V KAREN KOBY inspect the point of impact even though he stopped at the Cameron fuel dock to load water and fuel on the barge.  There was every opportunity for the Master to get on the barge and look at the point of impact to determine whether there was any damage.  This is relevant since the crew of M/V KAREN KOBY later reported that the barge was listing towards the port bow.  Rigid suggests to the Court that this is no coincidence.  (Prior to this voyage, the barge was in the Devall Fleeting area for several weeks without any signs of water causing the barge to list.  The testimony by all witnesses indicated that the barge was not listing either to the port or starboard at any time before its final voyage.)

M/V KAREN KOBY was unseaworthy in that it did not have the appropriate equipment, including spotlights, to see its tow some 900 to 1,000 feet off of its stern at night.  M/V KAREN KOBY had left the Cameron jetties at approximately 6:00 p.m. and did not take any effort to check its tow thereafter until approximately 3:30 a.m. when the tug inexplicably started decreasing in speed.  It was only at that time they attempted to check on the barge and noticed that it was listing to the port bow.

Neither the Master of M/V KAREN KOBY nor its Relief Captain took any effort whatsoever for a full 30 minutes between the time they noted that the barge was listing until the barge finally rolled over and sank!  They did not reduce speed, turn around to go check on the barge and possibly save it, nor head for shallow water in case the barge did sink.  This lack of any effort whatsoever to prevent the sinking of the barge Ambition is extraordinary.  If M/V KAREN KOBY had turned to the shore to get into shallow water, the barge more likely than not would not have been a total loss, considerably lessening the damages sustained as a result of this incident.  (The fact is that this barge should never have been in 50 feet of water 20 miles offshore!)  If the barge had been in less deep or shallow water and it did take on water as a result of the Captain striking the navigational pole, or for whatever reason, the barge could have been saved.  Instead, it nosedived into 50 feet of water where it remained for three months.  During that three months, the wave action along with the saltwater totally destroyed the barge.

**7.** **Uncontested Material Facts:**

    a.    M/V KAREN KOBY was owned and operated at all pertinent times by LA Carriers.

    b.    The barge Ambition was at all times owned by Rigid.

    c.    While in the tow of M/V KAREN KOBY, the barge Ambition sunk at approximately 4:00 a.m. on June 15, 2022.

    d.    The barge Ambition was declared a total loss on August 31, 2022 following the report by the salvager, McKinney Salvage, LLC, that it could no longer salvage the barge in one piece.

    e.    LA Carriers has not paid Rigid any sum of money since the sinking of the barge Ambition.

    f.    The barge Ambition was appraised for fair market value by Revpro and Associates on June 10, 2022 for $6,300,000.00.

    g.    On June 15, 2022, the barge Ambition capsized and sank while under tow of the M/V KAREN KOBY in the Gulf of Mexico.

    h.    The M/V KAREN KOBY was owned and operated by LA Carriers.

i.    The barge Ambition was owned and operated by Rigid.

j.    The barge Ambition, at the time of the sinking, did not have a load line certificate or a single voyage exemption.

k.    The barge Ambition was never drydocked for any reason since it was created by Rigid in 2020.

l.    The barge Ambition was declared a total loss on August 31, 2022 by Rigid's salvage company.

m.    M/V KAREN KOBY was inspected by the U.S. Coast Guard.

n.    Before the voyage at issue, the barge Ambition was spudded down at the Devall Fleet on the Gulf Intercoastal Waterway near Sulphur, Louisiana.

o.    Due to the height of the crane, the barge Ambition could not be towed through the Intracoastal Waterway and had to be towed down the Calcasieu River and offshore in the Gulf of Mexico to reach its destination to the Mississippi River near Myrtle Grove, Louisiana.

p.    CBF welding made temporary repairs to the barge Ambition in November 2020.

8.    **Contested Issues of Fact:**

a.    Was the sinking of the barge Ambition solely caused by the negligence of LA Carriers' management and the Master and Captain of M/V KAREN KOBY?

b.    Was M/V KAREN KOBY unseaworthy and said unseaworthiness was a substantial cause to the sinking of the barge Ambition?

c.    Was the management of LA Carriers negligent in assigning M/V KAREN KOBY, which drafted 12 feet, to tow the barge Ambition which had to stay in shallow water?

d.    Was the management of LA Carriers negligent in allowing Chester Murphy to be the Master of M/V KAREN KOBY for this tow considering his lack of knowledge of restrictions in towing inland barges with no load line certificate or a load line exemption?

e.    Was Captain Chester Murphy negligent in plotting a course across the Gulf of Mexico, taking the barge Ambition 20 miles offshore, beyond the legal limitation for towing non-load line certificated barges?

f.    Was Captain Chester Murphy negligent in noting that the barge Ambition had no Plimsoll mark on its hull (similar to the Plimsoll mark on the hull of M/V KAREN KOBY) and taking the barge beyond the 12-mile limitation (in violation of 46 CFR Part 7) or notifying LA Carriers that its tug was not suited for the tow and voyage in consideration of the tug's draft?

g.  Whether Captain Chester Murphy and/or Relief Captain Jerrad Williams were negligent in not taking any action whatsoever once they noted that the barge Ambition was listing.

h.  Whether Captain Chester Murphy and/or Relief Captain Jerrad Williams were negligent in not attending to the barge Ambition during the one-half hour between the time Relief Captain Williams first noted that the barge was listing and when it ultimately rolled over and sank.

i.  Whether Captain Chester Murphy and/or Relief Captain Jerrad Williams were negligent in not heading for shallow water once it was noted that the barge Ambition was listing.

j.  Whether M/V KAREN KOBY was unseaworthy since it could not adequately monitor a tow in its exclusive control at night.

k.  Whether Captain Chester Murphy and/or Relief Captain Jerrad Williams were negligent in towing the barge Ambition at night when they were unable to visually monitor the tow.

l.  Whether Captain Chester Murphy was negligent in allowing the barge Ambition to strike a navigational pole in the Calcasieu River while underway in the exclusive control of M/V KAREN KOBY.

m.  Whether Captain Chester Murphy was negligent in not inspecting the barge Ambition at the place he caused the barge to strike the navigational pole to determine whether there was any damage to the barge prior to taking the barge offshore at night.

n.  Whether Rigid sustained the following damages:

| | |
|---|---|
| *Total Loss of Barge Ambition (appraised 6/10/22)* | $ 6,300,000.00 |
| *Salvage Costs (McKinney Salvage)* | $ 9,076,885.53 |
| *Standby Vessels (Patriot Marine)* | $    513,661.07 |
| *Pollution Response (ES&H Consulting)* | $    320,291.53 |
| *Third Party Barge and Timber Mats Rental* | $    321,975.12 |
| *Loss of Use/Opportunity* | $  3,807,000.00 |
| ***TOTAL*** | **$20,339,813.20** |

o.      At the time of the sinking of the barge Ambition, the sea state was 2-3 foot seas.

p.      The barge Ambition consisted of an E-Crane mounted atop two barges, the GD 962 and GD 983.

q.      At the time of the sinking, the port barge, GD 962, was constructed in 1995, and the starboard, GD 983, was constructed in 1998, that made up the barge Ambition were constructed 28 and 25 years ago.

r.      The barge Ambition was never inspected by the U.S. Coast Guard.

s.      CBF Welding attempted temporary repairs to the barge Ambition in March, 2022 but could not complete the requested repairs.

t.      A diver attempted temporary repairs to the barge Ambition in March, 2022 but could not complete the requested repairs.

u.      CBF Welding attempted to repair a split in the hull approximately 6 feet in length in the hull of the barge.

v.      There were holes in the part of the spud well that was reinforced by a doubler plate.

w.      Rigid left selected areas of the barge Ambition on the bottom of the Gulf of Mexico.

x.      Rigid did not disclose any holes/cracks/splits in the hull to LA Carriers.

y.      Rigid did not disclose that the barge Ambition had temporary repairs.

z.      Shingles are temporary repairs.

aa.     Epoxy putty is a temporary repair.

bb.     Port No. 1 bulkhead was wasted.

cc.     M/V KAREN KOBY crew reported no water got on deck during the tow.

dd.     The temporary repairs could not have been seen without doing an internal barge inspection and/or drydock.

ee.     At the time of the sinking, the crew of the AMBITION, employed by Rigid, were not trained in properly ballasting the AMBITION.

ff.     Rigid had no policies or procedures on how to properly ballast the AMBITION.

gg.     At all material times, Rigid did not have proper policies or procedures for inspection of the Barge AMBITION as required by 26 CFR 1926.

hh.  At all material times, Rigid did not have proper certificate of documentation for the Barge AMBITION, required by 46 CFR 67.167.

ii.  At the time of the sinking of the AMBITION, the weather was mild.

jj.  At the time of the sinking of the Barge AMBITION, severe corrosion was present on the structure members, hull plating and "watertight" bulkheads in the port barge.

kk.  The corrosion outlined in 8F above, occurred over many years.

ll.  At the time of the sinking, the AMBITION had a number of temporary patches to its hull which had never been made permanent.

mm.  At the time of the sinking, the bulkheads of the AMBITION which were supposed to be watertight were in fact not watertight due to excessive corrosion in the compartments, allowing cracks and holes in the hull, allowing the free flow of water between the compartments and causing the sinking of the barge.

nn.  Rigid insured the AMBITION for $3.6 Million.

oo.  Rigid owned three E-Crane barges at all material times.

pp.  The sea state encountered during the tow of the AMBITION during the voyage in question was identical at 18 nautical miles and 12 nautical miles.

qq.  Rigid never paid La Carriers for the Tow of the Ambition, which was approximately $150,000

**9.**  **Contested Issues of Law:**

a.  Whether M/V KAREN KOBY was unseaworthy in that it had an incompetent Master who was unaware of the Federal Code Regulations in towing inland barges, which lack of knowledge was a substantial cause of the barge Ambition sinking and becoming a total loss.

b.  Whether M/V KAREN KOBY was unseaworthy in that it could not properly monitor its tow at night.

c.  LA Carriers' management had privity of knowledge that they were assigning a tug with a deep draft they later claim could not tow the barge Ambition in the appropriate waters (state territorial waters) as required by the U.S. Code of Federal Regulations (46 CFR Part 7).

d.  Whether LA Carriers was negligent in assigning Captain Chester Murphy to tow the barge Ambition when he lacked the appropriate knowledge of the limitations in towing an inland barge.

e.  Was LA Carriers negligent in allowing Captain Chester Murphy to plot his course in towing the barge Ambition and, once corporate management noted the course, did not take any remedial action to correct the same?

f.  Whether LA Carriers' management was negligent in not conducting the appropriate training of its Master and crew in taking measures to avoid the sinking of a tow once the tow was noted to be listing.  (M/V KAREN KOBY'S crew did not take any remedial measures to save the barge Ambition for 30 minutes.)

g.  Whether LA Carriers was negligent in detailing the appropriate measures for its Master and crew to take under the circumstances which resulted in the sinking of the barge Ambition.

h.  Whether the Barge AMBITION was unseaworthy when delivered to LA Carriers for tow for the voyage in question.

i.  Whether LA Carriers is entitled to a presumption that the AMBITION was unseaworthy since it sank in mild weather.

j.  Whether LA Carriers fulfilled any duty to inspect the AMBITION, if there is such a duty, by conducting a visual inspection of the AMBITION.

k.  Whether the AMBITION had hidden defects in its hull (severe corrosion and holes) so as to render it unseaworthy.

l.  Whether RIGID failed to maintain, repair and inspect the Barge AMBITION as required by U.S. Coast Guard and OSHA regulations.

m.  Whether the Pennsylvania Rule should be applied to Rigid for their failure to maintain repair and inspect the AMBITION as per U.S. Coast Guard and OSHA regulations.

n.  Whether Rigid, as owner of the AMBITION, had a duty to obtain a load line certificate or a single voyage exemption.

o.  Whether Rigid, through its broker, Patriot Marine Service, advised LA Carriers that the AMBITION was built to "ABS Specs".

p.  The fair market value of the AMBITION.

q.  Whether LA Carriers is entitled to be exonerated from fault in this matter due to the unseaworthiness of the AMBITION.

r.  If not exonerated, whether LA Carriers is entitled to limit its liability in this matter to the value of the M/V KAREN KOBY.

s.  The value of the M/V KAREN KOBY.

10.    **Exhibits:**

a.    **Plaintiff:**

1.    Photo of the Barge AMBITION prior to the sinking

2.    Logs of the M/V KAREN KOBY

3.    Photos of the M/V KAREN KOBY

4.    Photos taken during the salvage of the AMBITION

5.    Photos taken by Bartlett Engineering of the AMBITION

6.    Photos taken by Kyle Smith of the AMBITION

7.    Photos taken by Marc Fazioli of the AMBITION

8.    Weather reports of the route taken by the KAREN KOBY June 14 and 15, 2022

9.    Voyage plan of the KAREN KOBY dated June 14, 2022

10.    Barge report of the AMBITION prepared June 14, 2022

11.    Merchant Marine credentials of the crew of the KAREN KOBY

12.    Boatracs records of the M/V KAREN KOBY June 14, 2022 and June 15, 2022

13.    Rosepoint records of the M/V KAREN KOBY June 14, 2022 and June 15, 2022

14.    USCG 2692 for the incident in suit

15.    LA Carriers watch standing procedures

16.    Video record of movements of the M/V KAREN KOBY June 14, 2022 and June 15, 2022

17.    Drug testing results of the crew of the M/V KAREN KOBY following the incident in suit

18.    Foundation drawings of the AMBITION

19.    Brymar Marine lift plan for the AMBITION

20.    E-mails regarding the towing of the AMBITION at any time

21.    Texts recording the towing of the AMBITION at any time

22.    Records of the M/V BOSCO for the towing of the AMBITION in February 2022

23.    Barge inspection reports for the AMBITION at any time

24.    LA Carriers' records for tows of the AMBITION on prior voyages

25.    LA Carriers Towing Safety Management System (TSMS)

26.    Rigid Safety Manual

27.    Texts of Patriot Marine

28.    Fuel ticket

29.    Certificates of documentation for GD 983 and GD 962

30.    Welding invoice from CBF November 2020

31.    Welding invoice from CBF March/April 2022

32.    Rigid employee policy handbook

33.    Towing logs provided by Rigid

34.    Rigid's overview and equipment profile

35.    Rigid's appraisal of the AMBITION

36.    LA Carriers appraisal of the AMBITION

37.    Loss of use estimates of Rigid

38.    McKinney salvage invoice

39.    Diagrams of the AMBITION by Global Marine Technologies

40.    Bills of Sale for the GD 962 and GD 983

41.    Email between Patriot Marine and Dylan Trim

42.    Texts from Patriot Marine concerning the Barge AMBITION

43.    Rigid new hire Video 1

44.    Rigid new hire Video 2

45.    Photos post incident

46.    Videos post incident

47.    Miscellaneous pictures of the AMBITION while under tow

48.    Marine incident investigation report

49.    Photos taken by LA Carrier's experts – close-ups of hull interior and exterior

50.    Photos taken by LA Carrier's experts during the salvage of the AMBITION

51.    Texts and email between Patriot Marine (Brooks Luke) and Rigid

52.    Texts between Patriot Marine and LA Carriers

53.    Records of any survey or inspection of the Barge AMBITION at any time

54.    Certificate of documentation on the M/V KAREN KOBY

55.    Records of the Barge AMBITION breaking away during a hurricane

56.    Remnants of the Barge AMBITION preserved after the sinking

57.    Models, drawings and other demonstrative exhibits

58.    Photos, Video, Invoices produced by Coby Bernard and CBF Welders

59.    Any document produced by Coby Bernard and CBF Welders

60.    TVIB TSMS Management Audit Reports of LA Carriers and the M/V KAREN
       KOBY

61.    TVIB-RCP Management Audits of LA Carriers and the M/V KAREN KOBY

62.    BMS Audits of LA Carriers and the M/V KAREN KOBY

63.    Annual surveys of the M/V KAREN KOBY

64.    Spreadsheet from Rigid Constructors LLC on loss of use of the AMBITION

65.    Rigid's Policy of Insurance covering the AMBITION

66.    Records produced by USCG in response to FOIA request for repairs to
       Navigational Marker No. 85, Calcasieu River (Louisiana)

67.    Survey Report of Rivers and Gulf Marine Surveyors filed with the limitation
       action establishing value of the M/V KAREN KOBY

68.    Copy of pleadings in the McKinney Salvage v. Rigid case

69.     Copy of pleadings in the Rigid v. Mitsui case

70.     Invoice of LA Carriers to Rigid for voyage in suit

71.     Diving Records obtained by subpoena

72.     All other records obtained by subpoena

73.     Reports of the incident

74.     Maps of Louisiana and the Gulf of Mexico

**b.    <u>Defendant:</u>**

1.      Drawings prepared by Global Marine Technologies, LLC for the marrying of barges GD983 and GD962 which made the barge Ambition;

2.      Certificates of Documentation of barges GD 983 and GD962;

3.      Photograph of the barge Ambition prior to its sinking;

4.      NAA Report of Brymar Marine, LLC (Michael G. Hassett, PE) dated July 16, 2020 with attachments;

5.      List of prior tows of the barge Ambition from date of initial service through date of sinking;

6.      CBF Welding invoice dated November 25, 2020 for prior repair performed on the barge Ambition;

7.      CBF Welding invoice dated March/April 2022;

8.      Rigid's Employee Policy Handbook;

9.      Rigid Constructors Safe Work Practice Manual;

10.     Rigid Constructors, LLC Overview and Equipment Profile;

11.     Fair Market Value Report from Revpro & Associates dated June 10, 2022 showing fair market value of the barge Ambition and its mounted equipment five days before the sinking to be $6,300,000.00;

12.     Last known GPS coordinates for the barge Ambition from GPS broadcaster on Conex box (June 14, 2022-June 15, 2022);

13.     Photographs (2) of the barge Ambition leaving from the Intracoastal Waterway towards Cameron on the afternoon before the sinking;

14.     Barge report of the barge Ambition prepared on June 14, 2022;

15.     Photographs and videos taken by Jeff Mizzi and Shane Acosta the morning of June 15, 2022 within hours of the sinking of the barge Ambition;

16.     Multibeam survey of the site of the sinking of the barge Ambition performed on or about June 19, 2022;

17.     Rigid's First Notice of a Pollution Loss;

18.     Photographs of the barge Ambition taken by Forefront Emergency Management;

19.     Salvage proposals received by Rigid from Tritan Offshore, TNT Salvage, LLC, and DLS, LLC;

20.     Salvage Plan of McKinney Salvage, LLC prepared by Aaron McKinney submitted to the U.S. Coast Guard for approval on or about June 23, 2022;

21.     Update to Salvage Plan prepared by McKinney Salvage, LLC (for submission to the U.S. Coast Guard);

22.     Salvage Agreement dated July 14, 2022 between Rigid Constructors, LLC and McKinney Salvage, LLC;

23.     Invoices from McKinney Salvage, LLC;

24.     Invoices from Patriot Marine Services, LLC;

25.     Invoices from ES&H Consulting Services, Inc.;

26.     Video taken by salvage divers of the barge Ambition (underwater);

27.     Video taken of Aaron McKinney walking around the barge Ambition describing damage that occurred to the barge while underwater for four months and caused by the salvage efforts;

28.     Documentation regarding loss of use claim of Rigid for the loss of the barge Ambition (E-Crane 1);

29.     Texts and other communications between Patriot Marine and Rigid;

30.     Field Barge Survey of the barge Ambition performed on July 9, 2022 by Leviathan Offshore, LLC for McKinney Salvage, LLC depicting pre-salvage condition of the barge Ambition;

31.     Diagram sent by Aaron McKinney on July 11, 2022 showing the barge Ambition's current position in the mud at the bottom of the Gulf of Mexico;

32.     Safe Harbor Cost Tracking ledgers for E-Crane 1 Ambition;

33.     Photos taken during inspections of the barge Ambition after salvage;

34.     LA Carriers, LLC's website listing its vessels;

35.     LA Carriers Towing Safety Management System (TSMS);

36.     Logs of M/V KAREN KOBY from June 13, 2022 through June 20, 2022;

37.     Invoices of LA Carriers, LLC addressed to Patriot Marine from June 13, 2022 through June 24, 2022 and fuel charges;

38.     Voyage plan of M/V KAREN KOBY dated June 14, 2022;

39.     Boatrax records of M/V KAREN KOBY on June 14, 2022 and June 15, 2022;

40.     Rose Point records of M/V KAREN KOBY on June 14, 2022 and June 15, 2022;

41.     Video record of movements of M/V KAREN KOBY on June 14, 2022 and June 15, 2022; and

42.     Valuation Survey of M/V KAREN KOBY dated January 4, 2023 prepared by Budwine & Associates, LLC (attending surveyors, Craig G. Kimble and John B. Frye) and signed by Fred O. Budwine, President.

**11.    <u>Deposition Testimony:</u>**

a.      Rigid plans to introduce the video deposition testimony of Captain Chester Murphy that was taken on May 25, 2023 considering that he is a resident and domiciliary of the State of Florida, outside the subpoena power of this Court.

b.      LA Carriers may use the following depositions or portions thereof at trial:

    30(b)(6) of Rigid Constructors
    Jeff Mizzi
    Shane Acosta
    CBF Welding, Inc.
    Antonio Clay
    Ronnie Douget
    Aidan Honaker
    Dalton Morein
    Terry Scott
    Fred Weber
    Jerrad Williams

12.     **Description of Charts, Graphs, Models, Schematic Designs, and Similar Objects:**

    a.     **Plaintiff:**

LA Carriers may use charts, graphs, diagram, power point, or similar objects in opening statement and/or closing argument.

    (1)     La Carriers intends to present a remnant of the steel from the Ambition remaining in storage

    (2)     La Carriers intends to present maps showing the subject voyage

    (3)     La Carriers intends to use other demonstratives which may be necessary

    b.     **Defendant:**

Rigid may use photographs of the vessels in question for demonstrative purposes.

13.     **Witnesses:**

    a.     **Plaintiff:**

        1.     John Plaisance
            LA Carriers, LLC
            752 Industrial Park
            Larose, Louisiana 70373

        2.     Tommy Plaisance
            LA Carriers, LLC
            752 Industrial Park
            Larose, Louisiana 70373

        3.     Capt. Chester Murphy
            107 Smith Road
            DeFuniak Springs, Florida 32433

        4.     Antonio Clay
            418 East Westville Avenue
            Geneva, Alabama 36340

        5.     Jerrad Williams
            3457 West White Street
            Bonifay, Florida 32425

6.     Terry Allen Scott
752 Industrial Park
Larose, Louisiana 70373

7.     Jeff Mizzi
Rigid Constructors, LLC
3861 Ambassador Caffery
Lafayette, Louisiana 70503

8.     Shane Acosta
3861 Ambassador Caffrey
Lafayette, Louisiana 70503

9.     Ronnie Douget
3861 Ambassador Caffery
Lafayette, Louisiana 70503

10.    Dalton Morein
15 Omar Bradley Road
Ville Platte, Louisiana 70586

11.    Aidan Honaker
122 Cabernet Drive
Opelousas, Louisiana 70570

12.    Fred Weber
1000 Renaud Drive
Scott, Louisiana 70583

13.    Dillard Bowman
3861 Ambassador Caffrey
Lafayette, Louisiana 70503

14.    Coby Bernard
3523 Bares Road
Abbeville, Louisiana 70510

15.    Brooks Luke
7455 Highway 1
Lockport, Louisiana 70374

16.    Aaron McKinney
or other representative of
McKinney Salvage
2500 River Road
Baton Rouge, Louisiana 70821

17.   Robert Sarver
      3861 Ambassador Caffrey
      Lafayette, Louisiana 70503

18.   Dallin Coffman
      Forefront Emergency Management
      2345 Atascocita Road
      Humble, Texas 77396

19.   Sean Quinn
      Safe Harbor Insurance, Inc.
      c/o Staines Eppling
      3500 North Causeway Boulevard
      Metairie, Louisiana 70002

20.   Kyle Smith
      141 Allen Toussaint Boulevard, Suite 115
      New Orleans, Louisiana 70115

21.   Marc Fazioli
      12411 Donna Drive
      Houston, Texas 77067

22.   Bob Bartlett
      Patrick Adams
      Julia Boyd
      Scott Pierce
      Bartlett Engineering
      2618 Edenborn, Suite D
      Metairie, Louisiana 70002

23.   Scott McClure
      2929 Briar Park, Suite 220
      Houston, Texas 77042

24.   David Pereira
      Sabine Surveyors, Ltd.
      2424 Edenborn Avenue, Suite 620
      Metairie, Louisiana 70001

25.   Alan Archer
      1407 Hounds Hollow Court
      Lutz, Florida 33549

26.   Tristen Plaisance
      752 Industrial Park
      Larose, Louisiana 70373

27.    Dylan Trim
Rigid Constructors, LLC
3861 Ambassador Caffrey
Lafayette, Louisiana 70503

28.    Thomas Naquin
LA Carriers, LLC
752 Industrial Park
Larose, Louisiana 70373

29.    Mark Henry
LA Carriers, LLC
752 Industrial Park
Larose, Louisiana 70373

30.    Malcom Dienes Economist
(Not Yet Named)

31.    Kent Hoffmeister
Global Marine Technologies, LLC
548 Beau Chene Drive
Mandeville, Louisiana 70471

32.    Robert B. Our
Address Unknown

33.    Bobby Bonl
Rigid Constructors, LLC
3861 Ambassador Caffery
Lafayette, Louisiana 70503

34.    Steven Mayer
CBF Welders
3523 Bares Road
Abbeville, Louisiana 70510

35.    Mason Tomczek
CBF Welders
3523 Bares Road
Abbeville, Louisiana 70510

36.    Jarrett Carline
Rigid Constructors, LLC
3861 Ambassador Caffery
Lafayette, Louisiana 70503

37.     Austin Dooley
        Dooley Sea Weather Analysis, Inc.
        Post Office Box 63
        City Island, New York 10464

38.     Gary Tallent
        CBF Welders, Inc.
        3523 Bares Road
        Abbeville, Louisiana 70510

39.     Jim Smitty
        Rigid Constructors, LLC
        3861 Ambassador Caffrey
        Lafayette, Louisiana 70510

40.     Unnamed diver or representative of diving company who attempted repairs to
        the AMBITION in early 2022

41.     Andrew Minster
        Rivers and Gulf Marine Surveyors
        Post Office Box 869
        Slidell, Louisiana 70459

b.      **Defendant:**

1.      Jeff Mizzi
        President of Marine Division
        Rigid Constructors, LLC
        3861 Ambassador Caffery Parkway
        Suite 175
        Lafayette, Louisiana  70503

2.      Shane Acosta
        General Superintendent
        Rigid Constructors, LLC
        3861 Ambassador Caffery Parkway
        Suite 175
        Lafayette, Louisiana  70503

3.      Ronnie Douget
        Supervisor/Crane Operator
        Rigid Constructors, LLC
        3861 Ambassador Caffery Parkway
        Suite 175
        Lafayette, Louisiana  70503

4.   Dillard Bowman
     Operator
     Rigid Constructors, LLC
     3861 Ambassador Caffery Parkway
     Suite 175
     Lafayette, Louisiana  70503

5.   Dylan Trim
     Project Manager
     Rigid Constructors, LLC
     3861 Ambassador Caffery Parkway
     Suite 175
     Lafayette, Louisiana  70503

6.   Tristen Plaisance
     Vice Present of Operations
     LA Carriers, LLC
     752 Industrial Park
     Larose, Louisiana  70373

7.   Tommy Plaisance
     Operations Manager
     LA Carriers, LLC
     752 Industrial Park
     Larose, Louisiana  70373

8.   Charles "Chester" Murphy *(by video deposition)*
     Captain of M/V KAREN KOBY
     LA Carriers, LLC
     752 Industrial Park
     Larose, Louisiana  70373

9.   Jerrad Williams
     Relief Captain of M/V KAREN KOBY
     LA Carriers, LLC
     752 Industrial Park
     Larose, Louisiana  70373

10.  Terry Scott
     Deckhand of M/V KAREN KOBY
     LA Carriers, LLC
     752 Industrial Park
     Larose, Louisiana  70373

11.     Antonio Clay
        Deckhand of M/V KAREN KOBY
        LA Carriers, LLC
        752 Industrial Park
        Larose, Louisiana  70373

12.     Aaron McKinney
        Vice President
        McKinney Salvage, LLC
        2500 River Road
        Baton Rouge, Louisiana  70821

13.     Brooks Luke
        President
        Patriot Marine Services, LLC
        7455 Highway 1
        Lockport, Louisiana  70374

14.     Marshall Whitmer
        Vice President
        Specialty Diving of Louisiana, Inc.
        24358 Gliderport Road
        Loranger, Louisiana  70446

15.     Coby Bernard
        Owner
        CBF Welding
        3523 Bares Road
        Abbeville, Louisiana  70510

16.     Dallin Coffman
        Assistant Manager
        Forefront Emergency Management
        2345 Atascocita Road
        Humble, Texas  77396

17.     Fred O. Budwine
        Chris Budwine
        Craig G. Kimble
        John B. Frye
        Marine Surveyors
        Budwine & Associates, LLC
        211 Christine Court
        Covington, Louisiana  70433

18.     Michael G. Hassett
         Bryan M. Hassett
         Naval Architects/Marine Engineers
         Brymar Marine, LLC
         24180 Robali Drive
         Bush, Louisiana  70431

19.     Kent Hoffmeister
         Global Marine Technologies, LLC
         548 Beau Chene Drive
         Mandeville, Louisiana  70471

20.     René A. Cheramie
         A.R. Cheramie Marine Management, Inc.
         260 La Rue France
         Suite 203
         Lafayette, Louisiana  70508

21.     Andrew Badeaux, ASA
         Revpro and Associates
         14332 Black Ridge Avenue
         Baton Rouge, Louisiana  70818

**14.**     This is a non-jury case under Rule 9(h) of the Federal Rules of Civil Procedure.

**15.**     The issue of liability will not be tried separately from that of quantum.

**16.**     **Matters Which May Expedite Disposition:**

         Counsel is not aware of any other matters that might expedite a disposition of the case.

**17.**     Trial in this matter will commence on December 18, 2023 at 9:00 a.m. without a jury.  It is anticipated that the trial will take 4-5 days to complete.

**18.**     This Pre-Trial Order has been formulated after conference at which counsel for the respective parties have appeared in person or by telephone.  Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing.  Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

**19.**     Possibility of settlement of this case was considered.

Respectfully Submitted:

JONES WALKER, LLP

*s/ Jefferson R. Tillery*
_____
JEFFERSON R. TILLERY, Bar Roll No. 17831
T. PATRICK BAYNHAM, Bar Roll No. 16805
SARA B. KUEBEL, Bar Roll No. 38305
201 St. Charles Avenue
Suite 5100
New Orleans, Louisiana  70170-5100
Telephone:     (504) 582-8616
Facsimile:      (504) 589-8616
jtillery@joneswalker.com
tpbaynham@joneswalker.com
skuebel@joneswalker.com

HINSHAW & CULBERTSON, LLP

*s/ Lexi T. Holinga*
_____
LEXI T. HOLINGA, Bar Roll No. 30096
400 Convention Street
Suite 1001
Baton Rouge, Louisiana  70802
Telephone:     (225) 333-3244
Facsimile:      (225) 612-6398
lholinga@hinshawlaw.com

Attorneys for LA Carriers, LLC

BREAUD & MEYERS

*s/ Alan K. Breaud*
_____
ALAN K. BREAUD, Bar Roll No. 3420
420 Oil Center Drive (70503)
Post Office Box 51365
Lafayette, Louisiana  70505-1365
Telephone:     (337) 266-2200
Facsimile:      (337) 266-2204
alan@breaudlaw.com
tim@breaudlaw.com

Attorney for Rigid Constructors, LLC